**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GEORGE B. KIM, DOUGLAS KIM, and MICHAEL KIM, | ) ) ) | |
| Plaintiffs, | ) ) | No. 1:20-CV-03588 |
| v. | ) ) ) | Judge Edmond E. Chang |
| H GUYS, LLC, STEVEN H. CHONG, VINCENT T. TAN, and MEGAN M. CHONG, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

George Kim, Douglas Kim, and Michael Kim bring this lawsuit against H
Guys, LLC, Steven Chong, Vincent Tan, and Megan Chong (collectively, H Guys for
convenience's sake), asserting a variety of Illinois state law claims arising out of a
failed business relationship. R. 20, Am. Compl.[1] Against all of the Defendants, the
Kims allege claims premised on common law fraud, breach of fiduciary duty, and un-
just enrichment. Against the corporate defendant specifically, the Kims also bring
claims of aiding and abetting a breach of fiduciary duty, declaratory judgment, and,
in the alternative, breach of contract. All of the Defendants (from here on out, collec-
tively referred to H Guys unless context dictates otherwise) move to dismiss the

---

[1]This Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1): the Plaintiffs are
citizens of New York (George and Michael Kim) and California (Douglas Kim), while the in-
dividual Defendants are citizens of Illinois. R. 21 at 2. The LLC Defendant's sole member is
Eumsik, LLC, which in turn has three members, who are the three individual Defendants
(all Illinois citizens). *Id.* Citations to the docket are indicated by "R." followed by the docket
entry number and, if needed, a page or paragraph number.

complaint for failure to state a claim. R. 24, Mot. to Dismiss; Fed. R. Civ. P. 12(b)(6).
For the reasons that follow, the dismissal motion is denied.

## I. Background

For purposes of deciding a motion to dismiss, the Court accepts well-pleaded
facts as true and draws all inferences in the plaintiff's favor. *Sevugan v. Direct Energy
Servs.*, LLC, 931 F.3d 610, 612 (7th Cir. 2019). In this case, the Kims allege as follows.

The Halal Guys is a popular Mediterranean-cuisine restaurant originally
founded in New York City. Am. Compl. ¶ 18. In October 2014, the individual Defend-
ants approached the Plaintiffs and solicited the Plaintiffs' investment of significant
funds in the Defendants' planned operation of the first Halal Guys franchise in Chi-
cago. *Id.* ¶ 22. As part of their presentation, H Guys held themselves out to be savvy
managers and advisors, promising that they would bring valuable expertise, connec-
tions, and understanding of the Chicago marketplace. *Id.* ¶ 23. H Guys represented
to the Kims that the Defendants had been (1) granted a franchise by the Halal Guys
Franchise Inc., *id.* ¶¶ 30–31; and (2) granted exclusivity rights by the franchisor in
certain Chicagoland neighborhoods for a minimum of 10 years, *id.* ¶¶ 26–27. These
statements were set forth in writing in three documents: a Private Placement Mem-
orandum, a Letter of Intent, and an Investor Presentation. *See* R. 20, Pls.' Exhs. A–
C.

Relying on these representations, from October 2015 through February 2015,
the Kims executed subscription agreements to invest hundreds of thousands of dol-
lars. Am. Compl. ¶ 29. In reality and unbeknownst to the Kims, the representations

as to H Guys' qualifications, promised franchise rights, and exclusive rights were all false. *Id.* ¶¶ 30–34. H Guys tried to walk back the representations through a proposed revised Confidential Private Placement Memorandum (dated September 7, 2016), which was—not surprisingly—rejected by the Kims. *Id.* ¶¶ 35–37.

From August 2015 to April 2018, H Guys opened and operated The Halal Guys restaurants in the Gold Coast, Loop, and Wicker Park neighborhoods of Chicago. Am. Compl. ¶¶ 38–40. The operation of these locations, however, were delegated from the individual Defendants to employees who did not have the expertise or experience to run the restaurants. *Id.* ¶¶ 42–43. All three locations eventually faced allegations of sanitation and food-safety problems. *Id.* ¶¶ 48–49. H Guys also violated the Franchise Agreement by subletting space within the Loop location, failing to pay the Franchisor proper fees, and closing the Wicker Park location in May 2019. *Id.* ¶ 50.

Consequently, the Franchisor issued a violation notice to H Guys based on the above grounds. Am. Compl. ¶ 51. Due to H Guys' inability to cure the defects in complying with the agreement, the Franchisor terminated the agreement in July 2019. *Id.* ¶ 52. Through the course of the relationship between H Guys and the Kims, H Guys paid themselves over $300,000 in management fees and distributions. *Id.* ¶ 54. H Guys also improperly loaned themselves $57,832.74 and $293,546.26 from company funds. *Id.* ¶ 61; *see also* Pls.' Exhs. O–P. When the Kims confronted H Guys about the various problems, H Guys proposed a Membership Interest Repurchase Agreement, under which H Guys would repay the Kims their entire investment,

minus 10%, through six installment payments. *Id.* ¶¶ 55–56. But H Guys never followed through with this repurchase agreement. *Id.* ¶ 60.

After all this, the Kims filed suit in federal court. R. 1, Original Compl. The currently operative complaint is the Amended Complaint, which has six counts (for convenience's sake, the Amended Complaint will be referred to as the complaint unless otherwise noted). Count One alleges that H Guys made fraudulent statements with the intent of inducing the Kims to invest in H Guys, LLC. Am. Compl. ¶¶ 62–65. Counts Two and Three allege that the individual Defendants breached their fiduciary duty in their management of H Guys, LLC, and that H Guys, LLC (the corporate entity) aided and abetted the individual Defendants in those breaches. *Id.* ¶¶ 68–77. In Count Four, the Kims request a declaratory judgment that the Membership Interest Purchase Agreements are null and void. *Id.* ¶¶ 78–80. In the alternative and against H Guys, LLC, Count Five alleges breach of contract under the Membership Interest Purchase Agreement. *Id.* ¶¶ 81–85. Finally, Count Six alleges that H Guys unjustly enriched themselves by obtaining money from the Kims. *Id.* ¶¶ 86–87. H Guys has moved to dismiss all counts for failure to state a claim. Mot. to Dismiss at 1; R. 25, Defs.' Br. at 2.

## II. Legal Standard

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

Ordinarily, under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But claims alleging fraud must also satisfy the heightened pleading requirement of Federal Rule of Civil Procedure Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with *particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). Thus, Rule 9(b) requires (generally speaking) that the Kims' claims state "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated." *Rocha v. Rudd,* 826 F.3d 905, 911 (7th Cir. 2016) (cleaned up).[2] Put differently, their complaint "must describe the who, what, when, where, and how of the fraud." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011) (cleaned up). Having said that, context—

---

[2]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

that is, the overall factual setting of a claim—is important in evaluating what level of detail is required under Rule 9(b).

## III. Analysis

### A. Fraud (Count 1)

In Count One, the Kims allege that H Guys made numerous false statements of material fact to persuade the Kims to invest in the doomed venture. Am. Compl. ¶¶ 62–67. H Guys asserts that the fraud claim has failed to meet Rule 9(b)'s heightened pleading standard because the complaint "consists only of six brief paragraphs" and "does not differentiate between the four defendants." Defs.' Br. at 5–6. They further argue that the purported misrepresentations are immaterial and thus fail to state a claim under Rule 12(b)(6). R. 30, Defs.' Reply at 6–9.

The purpose of Rule 9(b) is to "force[] the plaintiff to conduct a careful pretrial investigation and minimize[] the risk of extortion that may come from a baseless fraud claim." *Pirelli*, 631 F.3d at 441 (cleaned up). That purpose is readily satisfied here. The complaint identifies specific fraudulent statements, names the individual Defendants who made the statements, and provides details about how H Guys' benefited financially from the fraud. The Kims allege that H Guys' statements concerning the Defendants' "[l]ocal expertise and connections with contractors and municipalities" during their investment pitch were false. Am. Compl. ¶ 23. The Plaintiffs also assert that, in particular, Steven Chong falsely stated that H Guys had exclusive-franchise rights to several neighborhoods in the Chicagoland area. *Id.* ¶¶ 26–27. Again naming a particular Defendant, the complaint alleges that Megan Chong

6

falsely misrepresented that H Guys had a franchise agreement already in effect for one month before the Defendants actually secured the agreement with the Franchisor. *Id.* ¶¶ 31–32. What's more, the complaint describes in detail how the Defendants never intended to pay the Kims under the terms of the Membership Interest Repurchase Agreement, *id.* ¶¶ 55–61, and collected more than $300,000 in management fees and distributions, *id.* ¶ 54. Given that the information required under Rule 9(b) varies based on the facts and context of the case, *Pirelli*, 631 F.3d at 442, in this investment-fraud case, the Kims have met their pleading burden.

H Guys argue the allegations do not include the who, what, when, where, and how of the fraud. Defs.' Br. at 6. Again, context is important and at some point the heightened pleading standard does not require detailed *evidence* (as distinct from allegations) nor a trial-ready set of allegations. In any event, the Kims have supplied the necessary details. The Plaintiffs identify the "who"—Steven Chong, Megan Chong, and Vincent Tan, Am. Compl. ¶¶ 13–15, 26, 31—and the "what"—material misrepresentations of H Guys' expertise, connections, and franchise agreements with the Franchisor, *id.* ¶ 23. It is true that, of all the individual Defendants, Vincent Tan is not singled out for making a particular misrepresentation. But his role as one of only three co-Managers of H Guys, LLC, as well as his role as Chief Operating Officer of the investment series and an equal-third-shares owner of Eumsik, LLC (the sole owner of H Guys, LLC), are sufficient to connect him to the fraudulent misrepresentations. *See e.g.*, *Oasis Legal Fin. Operating Co., LLC v. Chodes*, 454 F. Supp. 3d 724, 732 (N.D. Ill. 2020) (holding that the CEO of the licensor who violated copyright was

liable because "he participated in infringing [Defendant's] marks."). At the pleading stage, based on the small coterie of three key players in the corporate entity, it is plausible that all three knew what representations were being made in an effort to secure the investment. (When the case reaches the summary judgment stage, however, more will be needed, as well as actual, admissible *evidence*.) With regard to the "when" and "where," those also are explicitly laid out in the complaint: the Private Placement Memorandum and the Letter of Intent contained the purported false statements on exclusive rights and were sent in October 2014. Am. Compl. ¶¶ 22, 28. And Megan Chong's email offering the excuse that she supposedly could not disclose the franchise agreement was sent on October 31, 2014. Am. Compl. ¶ 31; R. 20-2, Pls.' Exh. B, Letter of Intent. There is no mystery about the pertinent locations of the underlying events, namely, the failed restaurants in the Gold Coast, Loop, and Wicker Park neighborhoods of Chicago. *Id.* ¶¶ 38–40. And the "how" is also alleged: due to the Kims' reliance on the false representations made by H Guys, the Kims "invested several hundred thousand dollars" in the enterprise. *Id.* ¶¶ 28–29. Rule 9(b) is satisfied.

Moving on from the Rule 9(b) arguments, H Guys contend that a provision of the Private Placement Memorandum bars any reliance on the statements of the individual Defendants. Defs.' Br. at 7–8. The cited provision is an *integration* clause, meaning that it the Memorandum sought to supersede other information pre-dating it: "THIS MEMORANDUM SUPERSEDES ALL WRITTEN AND/OR ORAL

INFORMATION, IF ANY, RECEIVED BY THE PROSPECTIVE INVESTOR BE-
FORE THE DATE HEREOF." R. 20-1, Pls.' Exh. A, Memorandum at 2 (capitalization
in original).

This argument is unpersuasive. It would be different if the Private Placement
Memorandum contained a non-*reliance* clause: "parties to contracts who ... want to
head off the possibility of a fraud suit will sometimes insert a 'no-*reliance'* clause into
their contract, stating that neither party has relied on any representations made by
the other." *Vigortone AG Prods., Inc. v. PM AG Prods., Inc.*, 316 F.3d 641, 644 (7th
Cir. 2002) (emphasis added). Non-reliance clauses in a contract can preclude fraud
claims "because they inherently disprove reasonableness." *Triumph Packaging Grp.
v. Ward*, 877 F. Supp. 2d 629, 647 (N.D. Ill. 2012). What H Guys point to here, how-
ever, is just an *integration* clause, not a non-reliance clause. *See id.*, 877 F. Supp. 2d
at 647 (identifying similar language in a contract as an integration clause). Under
Illinois law, "for a clause to be considered a no-reliance clause, and not an integration
clause, it must explicitly disavow any *reliance*." *Id.* (cleaned up) (emphasis added).
There is no explicit disavowal of reliance pointed to here. Maybe someday the Illinois
Supreme Court will deem integration clauses (not just non-reliance clauses) as
enough to preclude fraud claims, but for now the Seventh Circuit has predicted that
if the Illinois Supreme Court were to address the issue, it would line up with the
"majority rule" that "an integration clause does not bar a fraud claim." *Vigortone*, 316
F.3d at 644. So the integration clause is not fatal to the fraud claim.

9

The Private Placement Memorandum does go on to say, however, that "PROSPECTIVE INVESTORS ARE CAUTIONED NOT TO RELY UPON ANY INFORMATION NOT EXPRESSLY SET FORTH IN THIS MEMORANDUM." Memorandum at 2 (capitalization in original). This is a much closer question on qualifying as a non-reliance clause. At the pleading stage, however, this reads enough like a mere cautionary note rather than an explicit disavowal of reliance to warrant denial of the dismissal motion. Remember that, under Illinois law, a non-reliance clause must be *explicit* in saying that the parties are not relying on any representations made outside the written contract. *Triumph Packaging*, 877 F. Supp. 2d at 647; *see also Dyson, Inc. v. Syncreon Tech. (Am.), Inc.*, 2019 WL 3037075, at *2 (N.D. Ill. July 11, 2019) (holding that non-reliance clauses must say that the "parties *have not relied* on any extra-contractual representations in agreeing to the contract") (emphasis added). In contrast, here, the provision sounds a note of "caution[]," and avoids expressly saying that the parties have not relied on outside statements. Memorandum at 2.

Moreover—and more importantly—even if the cautionary provision were to qualify as a non-reliance clause, the Kims correctly point out that the Private Placement Memorandum is consistent with Megan and Steven Chong's oral statements. R. 29, Pls.' Br. at 6–8. The Memorandum expressly represents that H Guys, LLC "has been granted *the* opportunity to open and operate the Halal Guys stores in Chicago." Memorandum at 3 (emphasis added). In fact (at least allegedly), however, H Guys had not yet secured a franchise agreement nor exclusive rights from the Franchisor when the Memorandum was executed in October 2014. Am. Compl. ¶¶ 25–34. It is

10

also reasonable to believe that the "competition" section of the Memorandum section, which says that "the restaurants opened and operated by [H Guys, LLC] will not be the only Halal Guys restaurant," is only meant to warn that H Guys will operate additional Halal Guys restaurants—*not* that H Guys do not have exclusive rights to the franchise. Memorandum at 17. All in all, the Plaintiffs have plausibly alleged a fraud claim by setting forth the specific statements that they challenge, asserting that the statements are false, and alleging that they suffered injury as a result. Whether or not the statements are actually false is not an appropriate inquiry at this stage of the case. *See Dunbar v. Kohn Law Firm*, S.C., 896 F.3d 762, 765 (7th Cir. 2018) (explaining that dismissal based on the pleadings is improper when the relevant inquiry is fact-laden).

H Guys alternatively argue that the statements contained in the Letter, Memorandum, and Presentation are just puffery and thus fail to meet Rule 12(b)(6). Defs.' Reply at 6. To be sure, some of the statements likely do use what might be characterized as vague buzzwords: for example, "strong and comprehensive management team" and an "all-star cast of strategic advisors" probably qualify as mere puffery. Am. Compl. ¶ 22. These statements are "[e]xcessively vague, generalized, and optimistic comments" and "aren't those that a reasonable investor … would view as moving the investment-decision needle." *Kuebler v. Vectren Corp.*, 13 F.4th 631, 638 (7th Cir. 2021) (quoting *Carvelli v. Ocwen Financial Corp.*, 934 F.3d 1307 (11th Cir. 2019)) (cleaned up). But the Kims allege several other statements with more concrete content that can be factually tested: H Guys had "[l]ocal expertise and connections with

contractors and municipalities," Am. Compl. ¶ 23; H Guys had "exclusive rights … to several neighborhoods within the Chicagoland area," *id*. ¶ 26; and H Guys "cannot disclose the [franchise agreement] as we agreed with Franchisor we will not share it with anyone," *id*. ¶ 31. Those "statements are not like the clearly exaggerated or unprovable assertions" that other courts have deemed to be mere puffery. *Catilina Nominees Proprietary Ltd. v. Stericycle, Inc.*, 2021 WL 1165087, at *6 (N.D. Ill. Mar. 26, 2021) (citing cases).

In sum, the fraud claim survives the particularity requirement of Rule 9(b) and adequately states a claim for relief under Rule 12(b)(6).

## B. Fiduciary Duty (Counts 2 & 3)

H Guys argue that the claims for breach of fiduciary duty (Count Two) and for aiding and abetting the breach (Count Three) should be dismissed because they sound in fraud but do not meet Rule 9(b)'s heightened pleading standard. It is true that Rule 9(b) applies to any claim that "sounds in fraud—in other words, one that is premised upon a course of fraudulent conduct." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (cleaned up). In applying Rule 9(b), courts examine the underlying factual allegations, not the labels of the claims themselves. *Id.* (noting that Rule 9(b) should apply because "appellants' opening brief is riddled with references to fraud"). But "when an alleged claim includes allegations of both fraudulent and non-fraudulent conduct, Rule 9(b)'s heightened pleading standard applies only to allegations of fraud, and not to the complaint as a whole." *Siegel v. Shell Oil Co.*, 480

F. Supp. 2d 1034, 1039–40 (N.D. Ill. 2007) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104–05 (9th Cir. 2003)).

To assess whether the fiduciary-duty claims sound in fraud, it is necessary to set forth what must be pleaded to adequately state a breach of fiduciary duty. In order to state a claim for breach of fiduciary duty under Illinois law, a plaintiff must set forth factual allegations plausibly suggesting that (1) a fiduciary relationship existed; (2) the fiduciary duty was breached; and (3) the breach proximately caused the plaintiff's injury. *Lawlor v. N. Am. Corp. of Ill.*, 983 N.E.2d 414, 433 (Ill. 2012). Successfully stating a claim for aiding and abetting a tort under Illinois law requires allegations that "(1) the party whom the defendant aids performed a wrongful act causing an injury, (2) the defendant was aware of his role when he provided the assistance, and (3) the defendant knowingly and substantially assisted the violation." *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006) (citing *Thornwood, Inc. v. Jenner & Block*, 799 N.E.2d 756, 767 (Ill. 2003)).

Here, the Kims' complaint distinguishes the factual allegations needed to state the fiduciary-duty claims from the fraud claim. For example, the Kims do not need to rely on a fraudulent misrepresentation when they allege that H Guys "grossly mismanaged" H Guys, LLC and the restaurants, Am. Compl. ¶ 4, by delegating operational duties to employees "who were not competent to manage a fast-food franchise," *id.* ¶ 42; failing to meet "numerous health department inspections," *id.* ¶ 48; and violating the terms of the Franchise Agreement, *id.* ¶ 50. As a result of all that misconduct—none of which need to rely on fraud—the Franchisor issued a notice of default

13

against H Guys, H Guys failed to cure the defects, and the Franchisor then terminated the Franchise Agreement. *Id.* ¶¶ 51–52. These factual allegations do not "sound[] in fraud" and thus do not "implicate Rule 9(b)'s heightened pleading requirements." *Borsellino*, 477 F.3d at 507 (cleaned up).

H Guys contends that the Kims' fiduciary-duty claim is rooted in fraud because the Kims "reference the entire factual allegations portion of the complaint." Defs.' Reply at 9. This contention rings hollow. First, H Guys do not cite any cases holding that the incorporation of the complaint's earlier factual allegations—which is a common, nearly ubiquitous pleading practice—mutates every non-fraud claim into a fraud claim merely because of the incorporation. Indeed, there is authority to the contrary. *See Commodity Futures Trading Comm'n v. Yukom Commc'ns Ltd.*, 2021 WL 4477874, at *4 (N.D. Ill. Sept. 30, 2021) ("That the CFTC has employed standard, boilerplate language incorporating all of its factual allegations into each of its Counts is of no significance. The pertinent facts supporting Counts Three, Four, and Five, have nothing to do with fraud."). Second, the cases relied on by the defense to support the application of Rule 9(b), Defs.' Br. at 3–4, are distinguishable because the plaintiffs in those cases relied on factual allegations that sounded in fraud to state what on the surface were non-fraud claims. For example, in *Cornielsen v. Infinium Capital Management, LLC*, the fiduciary-duty claims were "premised on allegations that the defendants knowingly misled Plaintiffs." 916 F.3d 589, 604 (7th Cir. 2019). The employee-plaintiffs in that case alleged that their employer "made several misrepresentations and omissions" that induced the employees to enter into an equity-conversion

14

program. The employees did not at all distinguish the fiduciary-duty claim from the security-fraud claim, so the Seventh Circuit applied Rule 9(b). *Id.* Not so here. The alleged mismanagement and incompetence of H Guys, LLC and the restaurants stand apart from the alleged fraudulent misrepresentations. Rule 9(b) does not apply.

Even if H Guys is correct that the fiduciary-duty claims are subject to the heightened pleading standard, the Amended Complaint meets the standard. In *Hefferman*, the Seventh Circuit reversed the dismissal of a fiduciary-duty claim, because even measured against Rule 9(b), the complaint "identif[ied][] the person making the misrepresentation" and "the time, place, and content of the misrepresentation, and the method [of] the misrepresentation." 467 F.3d at 598, 601 (cleaned up). As explained earlier, the Kims have already met this standard for their fraud claim. Even if the allegations of fraud were necessary to adequately state a fiduciary-duty claim, the complaint adequately identifies the individual Defendants as the managers of H Guys, LLC, Am. Compl. ¶¶ 13–15, alleges that H Guys misappropriated corporate funds for their personal use, *id.* ¶ 61, and describes in detail how H Guys grossly mismanaged H Guys, LLC, *id.* ¶¶ 38–50. Similarly, in pleading aiding and abetting a fiduciary-duty breach against H Guys, LLC, the Kims allege that the company "knowingly and substantially" facilitated the tortious activities conducted by individual Defendants. *Id.* ¶ 76. To the extent that the Kims' fiduciary-duty claims turn on fraud, the complaint satisfies Rule 9(b).

## C. Unjust Enrichment (Count 6)

Moving on to the unjust-enrichment claim, here again H Guys contends that the claim sounds in fraud. "In Illinois, [t]o state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (cleaned up).

For this particular claim, the Kims allege that H Guys "paid themselves in excess of $300,000," Am. Compl. ¶ 54, which they received through management fees and distributions, *id*. The Plaintiffs also allege that H Guys inappropriately loaned themselves $57,832.74 and $293,546.26 from company funds. *Id*. ¶ 61. Again, these allegations are separate from the fraudulent misrepresentations alleged in Count One. Although it is possible for an unjust enrichment to really be just another version of fraud, those cases are premised on obtaining money through a fraudulent scheme. *See e.g., Pirelli*, 631 F.3d at 448 ("Walgreens was engaged in a massive, perhaps fully-automated, system of filling prescriptions for the more expensive forms of [drugs]."). Unlike in those cases, for the unjust-enrichment claim, the Kims do not need to allege that H Guys participated in a fraud scheme to appropriate funds from investors. Instead, similar to the fiduciary-duty claim, the Defendants' unjust reaping of investment proceeds arise, at least in substantial part, from the alleged mismanagement and incompetence of the individual Defendants. So the unjust-enrichment claim is not subject to Rule 9(b).

16

Even if the unjust-enrichment claim were subject to a heightened pleading requirement, the Kims meet it. As previously explained, in applying Rule 9(b), context is key. The particularity requirement should be applied in view of lack of access to "critical facts," *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998), particularly where, as here, the context otherwise plausibly suggests that the three managers of the company made material misrepresentations to lure investors and then paid themselves significant sums as the restauranters foundered. As the Plaintiffs rightly point out, H Guys control the relevant records of the company's finances and use of funds. Given that the Kims have pled with particularity the method and practice by which H Guys "violate[d] the fundamental principles of justice, equity, and good conscience" in the allegedly fraudulent misrepresentations and mismanagement, *Cleary*, 656 F.3d at 516, the unjust-enrichment claim satisfies Rule 9(b). Maybe discovery will reveal zero fraud and no unjust enrichment, but the pleading stage assumes the truth of the allegations, and they suffice.

### D. Individual-Defendant Liability

For their final two arguments, H Guys advance two contentions that purportedly apply across the board to all of the claims. The first is that the Kims "accepted that H Guys, LLC would be solely responsible" for any wrongdoing, so the claims against the individual Defendants should be dismissed. Defs.' Br. at 13; Defs.' Reply at 12–13. The defense cites to the Private Placement Memorandum, which states that H Guys, LLC "will be wholly responsible for major decisions, management, relationship with Franchisor, and operations of the company." Memorandum at 14. The

17

defense also points to the operating agreement of the Memorandum, which states that, "No Member, in its capacity as such, shall be liable for the debts, liabilities, contracts, or other obligations of the Company …." *Id.* at 32. These are not escape hatches for the individual Defendants.

First, the Kims correctly point out that they are not suing the individual Defendants for "debts, liabilities, contracts, or other obligations" of the company. Pls.' Br. at 13. Instead, the Kims allege *tort* claims that are not blocked by corporate limited-liability principles. *Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C.*, 385 F.3d 737, 742 (7th Cir. 2004) ("It is a common misunderstanding that the principle of limited liability protects the shareholders and officers of a corporation for liability for their own wrongful acts. It does not.") (cleaned up). The alleged *tortious* misconduct of the individual Defendants are not protected by limited-liability principles, because the individual Defendants are not "being called to account for the wrongs of the corporation." *Id.* Put another way, individual executives of a corporate entity cannot "buy immunity from suits for [their] *torts* by being a member of a business corporation …." *Id.* (emphasis added). Corporate officers—like Steven Chong, Vincent Tan, and Megan Chong—may be held individually liable for the conduct of the corporation if the officer "participated" in the conduct giving rise to corporate liability. *Itofca, Inc. v. Hellhake*, 8 F.3d 1202, 1204 (7th Cir. 1993) (cleaned up); s*ee also Fifth Third Mortg. Co. v. Kaufman*, 2017 WL 4021230, at *13 (N.D. Ill. July 25, 2017) (applying personal liability against an attorney who represented an entity that engaged in fraudulent lending and who participated in the

scheme), *aff'd*, 934 F.3d 585 (7th Cir. 2019); *Oasis*, 454 F. Supp. 3d at 732. Consequently, the contention that only H Guys, LLC should be held liable is rejected.

### E. Acceptance of Risk

The second across-the-board argument presented by the defense is that the Kims accepted the risk of the failed investment by signing a waiver of risk. Not surprisingly, the Private Placement Memorandum warns of investment risk: "THIS OFFERING INVOLVES SUBSTANTIAL RISKS TO INVESTORS, INCLUDING THE RISK THAT INVESTORS MIGHT LOSE THEIR ENTIRE INVESTMENTS IN THE COMPANY." Memorandum at 2 (capitalization in original). But assumption of risk and similar doctrines like contributory negligence are not proper affirmative defenses to any of the Plaintiffs' claims. Yes, of course parties to a contract may allocate risk, and later they generally are bound by their allocation. Standard contract risk-allocation is not, however, a defense to tortious acts like fraud or breach of fiduciary duty. *Chamberlain Mfg. Corp. v. Maremont Corp.*, 1993 WL 535420, at *6 (N.D. Ill. Dec. 19, 1993). Neither is contributory negligence a defense to fraud. *United States v. Peterson*, 823 F.3d 1113, 1123 (7th Cir. 2016). Unjust enrichment is based on an implied or quasi-contract, *People ex rel. Hartigan v. E. & E. Hauling, Inc.*, 607 N.E. 2d 165, 177 (Ill. 1992), the intentional breach of which is likewise not subject to a defense like assumption of risk.

In support of their defense, H Guys cite two cases, but both are different from this case. First, H Guys rely on *In Re Olympia Brewing Company Securities Litigation* to contend that acceptance of risk is a proper affirmative defense under Illinois law.

1985 WL 3928 (N.D. Ill. Nov. 13, 1985). But *Olympia Brewing* confined the viability of assumption-of-risk defenses "to situations involving persons who have a contractual or employment relationship with the defendant." 1985 WL 3928, at *7 (cleaned up). And the defense applies only "against a plaintiff who voluntarily exposes himself to a specific, known risk." *Id*. H Guys offers on reason to think (at least at the pleading stage, when the facts are confined to the Amended Complaint) that the Kims subjected themselves to a known risk of fraud, breach of fiduciary duty, or unjust enrichment. As the district court acknowledge in *Olympia Brewing*, mere knowledge of "the general risks associated with investing" are insufficient to rely on assumption of risk under Illinois law. *Id.*

The second case cited by H Guys is *Mancini v. Prudential-Bache/Fogelman Harbour Town Properties, L.P.* 1991 WL 171966, at *7 (N.D. Ill. Sept. 3, 1991). But the court in *Mancini* only held that explicit acknowledgement of "a high degree of risk" in the private placement memorandum at issue there was enough to undercut an allegation of a *mischaracterization* of the risk. *Id*. Here, the Kims do not allege that H Guys distorted the characterization of the risk in a typical high-risk investment. Instead, the Plaintiffs allege that H Guys engaged in fraud, breach of fiduciary duty, and unjust enrichment. *Mancini* does not apply.

To the extent that H Guys offer the risk-warning provision as relevant to the reliance and materiality elements of the fraud claim, the pleading stage is not the right time to invoke the warning. Reasonable reliance and materiality typically are questions of fact, and thus not generally a valid basis for a pleading-stage dismissal

motion. *See Thompson v. IFA, Inc.*, 536 N.E.2d 969, 973 (Ill. App. Ct. 1989) (materiality is a question of fact); *Arlington Fin. Corp. v. Ben Franklin Bank of Illinois*, 1999 WL 286080, at *4 (N.D. Ill. Apr. 29, 1999) (reasonable reliance is a question of fact); *Jernryd v. Nilsson*, 1986 WL 13750, at *6 (N.D. Ill. Dec. 4, 1986) (materiality and reliance are questions of fact). It might be that enough evidence in discovery is uncovered to undermine the factual allegations and thus warrant renewal of the argument at summary judgment, but now is not the right time. The assumption-of-risk argument is rejected.

## IV. Conclusion

The defense motion to dismiss is denied. The parties shall confer and propose a discovery schedule (using the joint initial status report template) and file the joint status report by April 13, 2022. To track the case only (no appearance is required), a tracking status hearing is set for April 22, 2022, at 8:30 a.m.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 26, 2022

21